Edward Harris v. Commissioner.
Harris v. Commissioner
Docket No. 2207-68.
United States Tax Court
T.C. Memo 1970-331; 1970 Tax Ct. Memo LEXIS 32; 29 T.C.M. (CCH) 1510; T.C.M. (RIA) 70331; November 25, 1970, Filed. Edward Harris, pro se, 14335 Burbank Blvd., Van Nuys, Calif. Robert H. Feldman, *33 for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioner's income tax for the calendar years 1964, 1965, and 1966 in the amounts of $2,306.96, $1,370.28, and $1,996.99, respectively. At the trial petitioner filed an amendment to petition in which he alleged that he is entitled to refunds for the years 1961, 1962, and 1963 in the amounts of $1,552.92, $1,859.02, and $276.21, respectively because of net operating loss carrybacks. Respondent on March 6, 1970, filed a Motion to Dismiss for Lack of Jurisdiction and to Strike as to the Taxable Years 1961, 1962 and 1963 on the ground that no deficiency notice had been mailed to petitioner with respect to these years and that they were involved in this case only insofar as it might be necessary to determine petitioner's income for those years to find what amount, if any, of net operating loss petitioner would be entitled to carry over from the years 1964 or 1965 to the year 1966. On March 16, 1970, an order was entered that the parties present arguments in their briefs with respect to respondent's motion. Petitioner in his brief did not contend that *34 he had been issued a notice of deficiency for any of the years 1961, 1962, and 1963, but contended that this Court should have jurisdiction to grant refunds for those years since he had previously filed claims for refunds for each of the years involved. It is well settled that this Court has jurisdiction to determine a deficiency in or overpayment of tax by a taxpayer only for those years with respect to which a notice of deficiency has been mailed by the Commissioner to such taxpayer and that the jurisdiction of this Court over other years is limited to consideration of such facts as may be necessary to correctly redetermine the taxpayer's tax liability for a year with respect to which a deficiency notice has been mailed to the petitioner. Sections 6212, 6213, and 6214, I.R.C. 1954. [1] We, therefore, sustain respondent's motion and will enter an appropriate order dismissing petitioner's petition insofar as it attempts to place in issue the years 1961, 1962, and 1963. However, we will consider the evidence in the record with respect to those years to the extent necessary to permit a determination of whether there is a net operating loss carryover from either 1964 or 1965 to the year *35 1966 and, if so, the amount of such loss carryover. Having disposed of the jurisdictional question, the remaining issues for decision are (1) the proper amount of deductions to which petitioner is entitled in the years 1964 and 1965 for operating losses on two rental properties which he owned jointly with either his brother or his brother's 1512 wife, (2) the amount of petitioner's loss on foreclosure in 1965 of the mortgage on one of these properties, (3) the amount of the operating profit or loss with respect to the other such property in 1966, (4) whether petitioner is entitled to a demolition loss with respect to another property in 1964 and if so the amount thereof, and (5) how should the net operating losses, if any were sustained by petitioner in the years 1964 and 1965, be applied in determining whether petitioner is entitled to an operating loss carryover to the year 1966. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner, an individual who resided in Van Nuys, California, at the time of the filing of the petition in this case, filed his individual Federal *36 income tax returns for the calendar years 1964, 1965, and 1966 with the district director of internal revenue at Los Angeles, California. Sometime prior to the year 1963 petitioner and his brother, Lawrence Harris (hereinafter referred to as Lawrence) entered into an oral agreement with respect to the purchase of certain properties, the construction of buildings thereon, and the sale of those buildings. Lawrence was an architectural engineer. He and petitioner agreed that petitioner would furnish the "front" money to build certain buildings and Lawrence would do the architectural and contractor work. The buildings were to be apartment buildings. Petitioner and Lawrence planned to rent the apartments in each building as soon as the construction of that building was completed and immediately after the various apartments had been rented, sell the building. They agreed that for the services which each was to render he would receive 50 percent of the expected profit. In accordance with their agreement, petitioner and Lawrence in 1962 purchased property at 6922 Hazeltine Avenue, in Van Nuys, California (hereinafter referred to as the Hazeltine property), and in 1963 constructed thereon *37 a 16-unit apartment house. The title to this property was at sometime during 1963 placed in the names of petitioner and Sylvia Harris, the wife of Lawrence. The parties, however, understood that Sylvia held title to the property on behalf of Lawrence. During 1963 or 1964 petitioner and Lawrence acquired property at 14335 Burbank Boulevard in Van Nuys, California (hereinafter referred to as the Burbank property), and build a 20-unit apartment building thereon in 1964. In 1963 either petitioner or Lawrence or the two of them or petitioner jointly with Sylvia acquired a piece of property in Canoga Park, California at a cost of $25,000. The settlement statement for the closing of the purchase of this property was made in the name of Lawrence. There was on this property at the time it was acquired a house which was being rented at $85 per month. During the year 1964 rents from the apartments on the Hazeltine property were received in the amounts of $13,720. The amounts so received were used to pay various expenses in connection with the operation of the Hazeltine property. On a straight line basis which was the basis used by petitioner on his tax return for the years 1964 and 1965, *38 depreciation on the Hazeltine property was $6,150 for the year 1964 and $4,462.50 for the period from January 1, 1965, until the time the mortgage on the Hazeltine property was foreclosed in 1965. For the year 1964 repair costs on the Hazeltine property were $401.64 and other operating expenses were $17,461.12. These operating expenses did not include any amount for telephone, transportation, or office expenses. For 1965 operating expenses on the Hazeltine property of $9,868.36 were sustained without taking into consideration a $213 note payment which respondent on brief conceded was properly a part of operating expenses. The $9,868.36 operating expenses did not include any amount for transportation, telephone, and office expenses incurred in connection with the rental operation. In the year 1964, and for part of the year 1965, petitioner lived in the Hazeltine property and for the remainder of 1965 lived in the Burbank property. The Hazeltine and Burbank properties are about 3 miles apart. During the year 1965 rents were received from the apartments on the Hazeltine property in the amount of $2,900. Petitioner had a telephone in his apartment in either the Hazeltine or Burbank *39 property which he used for his personal use and also used for necessary calls with respect to rental of apartments. Petitioner during the years 1964 and 1965 owned a Chevrolet automobile which he used when necessary to drive between the Hazeltine 1513 and Burbank properties in connection with the rental operation or to pick up a prospective tenant and take him to see an apartment in one or the other of the properties. Petitioner also at times wrote letters in connection with the rental operations of the Hazeltine property on stationery he purchased for that purpose and purchased stamps for mailing those letters. In addition to the other operating expenses of the Hazeltine property there were telephone expenses of $60 in each of the years 1964 and 1965, transportation expenses of $200 in each of these years, and office expenses of $60 in each of these years. The construction of an apartment house on the Hazeltine property in 1963 was financed primarily by a loan from the American Savings and Loan Association which was granted in the name of Edward Harris and Sylvia Harris and from a second mortgage loan on the property. However, there were payments in the total amount of $19,777.36 *40 in connection with the construction of the apartment building which were made from funds other than the proceeds from the construction loan and second mortgage loan. The disbursements which totaled the $19,777.36 were made by Lawrence, the general contractor on the project. Also, a downpayment in the amount of $10,840 was made on the property not from loan proceeds into an escrow account. In 1963 and 1964 the amounts of $1,021.30 and $2,510.84, respectively, were made as a reduction in principal on the American Savings and Loan Association mortgage. In late 1962 a deposit in the amount of $700 was made with the American Savings and Loan Association in connection with obtaining the construction loan. The second mortgage loan obtained by petitioner and Lawrence was from Bobby G. and Betty Jeanne Spicer. The funds obtained from this loan were used in construction of the apartment on the Hazeltine property. During 1962 $724 of the principal of this second mortgage was repaid and during 1963 $1,158.05 of the principal of this loan was repaid. In 1964 payments on the Spicer note were in arrears and the Spicers filed a notice of default and election to sell under deed of trust. In order to *41 obtain the filing by the Spicers of a rescission of this notice of default and election to sell under deed of trust, petitioner and his brother Lawrence, on April 15, 1964, paid $3,551.98 to the trustee under the deed of trust, Woodnard, Inc. The rescission of the notice recited that the beneficiaries (the Spicers) had heretofore delivered to the trustee a declaration of default and demand for sale and that they now gave notice that they hereby rescinded, cancelled, and withdrew the declaration of default. The receipt for the payment of $3,551.98 carried the legend "Received from Mr. Lawrence Harris" the amount of $3,551.98. Above the name "Lawrence" on the receipt was written the name "Edward." In addition to the principal payment of $724 on the Spicer note in 1962 there was an interest payment of $980 on that note. For the years 1965 and 1966 there was depreciation sustained and operating expenses incurred by petitioner and Lawrence in connection with the rental of apartments on the Burbank property in the following amounts: 1965
1966
Depreciation $ 4,050.00
$ 4,050.00
Interest
16,456.72
10,468.54
Property taxes
3,625.66
2,285.48
Other expenses 9,589.20
6,251.77
Total
$29,671.58
$19,005.79
*42 Included in other expenses for each of the years 1965 and 1966 are $250 for transportation expense, $150 for telephone expense and $60 for office expenses. In late 1963 petitioner and Lawrence borrowed $180,000 from parties by the name of Moore. These funds were used in construction of the apartment building on the Burbank property and the loan was secured by a second deed of trust on the Burbank property. In 1964 petitioner and Lawrence paid $9,900 of interest in connection with this $180,000 loan on the Burbank property, no portion of which was claimed to be deductible by petitioner on his 1964 income tax return. After the purchase of the Canoga Park, California property in 1963, petitioner or his brother attempted to collect the rent each month from the tenant who was living in the house on the property. The rent would not be timely paid but the tenant would make promises to pay the next week or the next month. After some length of time the tenant left the house and when petitioner and Lawrence inspected the house after the tenant had left they found broken windows, plumbing removed, doors gone, and the house in an unlivable condition. Thereafter they received notices from *43 the Fire Department with respect to the lack of safety of the house and finally received a citation sometime late in 1964, requiring them to either repair or demolish the house since the house in its present condition 1514 constituted a fire hazard. After this citation had been received, the house was demolished at a total cost of $1,383. As of September 6, 1962, petitioner had $35,729 in 23 separate savings accounts in the Los Angeles area. The funds in these savings accounts had been accumulated by petitioner gradually and the moneys from these accounts were withdrawn at varying times by petitioner to purchase real property. Petitioner on his original income tax return for the calendar year 1964 claimed a loss on rental of the Hazeltine property of $10,292.76, computed by subtracting from total rents received of $13,720 depreciation on the straight line basis of $6,150, repairs of $401.64 and other expenses of $17,461.12. Respondent in his notice of deficiency disallowed the claimed loss of $10,292.76 with the statement that it was disallowed for lack of substantiation. Petitioner, after receipt of the notice of deficiency which was dated March 11, 1968, filed with respondent *44 an amended income tax return for the year 1964 which he signed under date of April 12, 1968. On this amended return petitioner claimed a loss from the rental of the Hazeltine property of $11,659.43 computed by subtracting from rents received of $13,720, depreciation of $7,516.67, repairs of $401.64, and other expenses of $17,461.12. With this amended return for the year 1964 was filed a claim for refund for the year 1961 which was based on the carryback of the loss shown on the amended 1964 return to the year 1961. In the amended return petitioner claimed also a loss on the demolition of the building on the Canoga Park, California property in the amount of $1,383. On both the original and amended return the basis of the building on the Hazeltine property was shown as $134,000 and the basis of the fixtures as $13,000. The increased depreciation claimed in the amended return resulted from a claim for additional first year depreciation on the amended return which had not been claimed on the original return. At the trial petitioner claimed that the basis of the building should be increased from $134,000 to $146,346 and claimed "bonus depreciation" on fixtures under section 179. At the *45 trial petitioner also claimed that he should be allowed a demolition loss on the Canoga Park property of $21,383 which was based on allocating 80 percent of the $25,000 paid for the property to the building and adding to the resultant $20,000 the $1,383 demolition cost. Petitioner claimed that he should be entitled to the total loss of this property. On his income tax return for the calendar year 1965 petitioner claimed a loss of $48,731.77 from the foreclosure on the Hazeltine property. Petitioner did not show the computatation of the loss of $48,731.77 claimed on the foreclosure of the Hazeltine property but he did not claim any loss from the operation of this property on the rent schedule on his return, and the parties stipulated that the 1965 operations loss on the Hazeltine property was included in the foreclosure loss of $48,731.77 shown on petitioner's return. Respondent in his notice of deficiency disallowed this claimed loss for lack of substantiation. Petitioner in a reply to respondent's answer claimed that the foreclosure loss on the Hazeltine property which he sustained in 1965 should be $50,689.55 computed as follows: Downpayments and payments on loan
$19,135.37
Construction costs and construction loan paid by petitioner
19,346.45
1965 operating loss from rentals at 6922 Hazeltine Avenue, Van Nuys, California
11,207.73
Transportation expenses 1,000.00
Total loss claimed on foreclosure
$50,689.55
*46 At the trial petitioner claimed that this loss should be increased by an additional amount of $3,551.98 which he paid on the Spicer note to obtain the rescission of the notice of default and election to sell under deed of trust. At the trial petitioner also claimed that depreciation which was included in the claimed loss in the amount of $4,462.50 should be increased by the allowance of an increased basis for the Hazeltine building and "bonus depreciation" under section 179 on fixtures. Petitioner claimed no deduction with respect to the Burbank property on his return for the calendar year 1964 but at the trial claimed to be entitled to a deduction of $6,000 for interest paid in 1964 with respect to the loan on the Burbank property. On his return for 1965 petitioner claimed a deduction of a loss on operation of the Burbank property of $7,655.29 computed by subtracting from rents received of $11,200 depreciation of $4,050 and repairs and other expenses of $14,805.29. Respondent in his notice of deficiency disallowed the claimed loss from rental of the Burbank property of $7,655.25 for lack of substantiation. At the trial petitioner claimed that the expenses in connection with *47 the operation 1515 of the Burbank property for the year 1965, exclusive of depreciation, were $31,802.76 of which one-half or $15,901.38 was deductible by him. On his income tax return for the calendar year 1966 petitioner claimed a loss from the operation of the Burbank building of $3,704.79 computed by subtracting from total rents received of $9,818 depreciation of $4,050 and other expenses of $9,472.79. Petitioner also claimed a deduction for "net operating loss carryback (1966)" of $6,283.15. Respondent in his notice of deficiency disallowed these claimed deductions for lack of substantiation. On April 15, 1968, petitioner filed a claim for refund of income tax for the year 1962 of $1,709 which he showed to be computed as follows: Due to net operating loss suffered in 1965 of
$46,576.70 6,283.15
Used in 1966
$40,293.55
Carryover 10,330.08
To be applied to 1962 $29,963.47
Carryover
Also on April 15, 1968, petitioner filed a claim for refund of income tax for the year 1963 in the amount of $276.21, which he computed by showing an operating loss sustained in 1965 of $46,576.70, with $16,613.23 previously used in 1966 and 1962 with *48 a carryover of $29,963.47 of which $1,646.53 was to be applied to 1963. Petitioner on his 1962 income tax return reported total income of $10,330.08 which was shown to have been received from wages, and claimed a standard deduction of $1,000, showing his total net income to be $9,330.08. Petitioner reported no income from interest for the year 1962 and claimed no business expense deductions. For the year 1963 petitioner on his Federal income tax return reported wages of $13,328.70 and interest from North Hollywood Federal of $100.48, making a total income of $13,429.18. From this amount he subtracted itemized deductions of $11,782.65 which consisted of interest expense of $9,835.41 paid in connection with an apartment house to American Savings and Loan Association and the Spicers, taxes of $1,479.69 and other deductions of $467.55, which included a deduction of $334.55 for "Apt. House Fire Insurance." Petitioner's 1963 income tax return was the subject of a "U.S. Treasury Department - Internal Revenue Service Report of Individual Income Tax Audit Changes" attached to a form letter addressed to him under date of August 14, 1964, by the district director of internal revenue, in which *49 it was proposed to disallow a deduction he had claimed of $600 for a dependency exemption for his mother, to disallow computation of his tax as head of a household, and to disallow a deduction for "Fire Insurance" of $334.55. The record does not show whether any adjustments were finally made in petitioner's income as reported for the year 1963 in accordance with these proposed adjustments. Respondent takes the position that petitioner's 1962 reported income should be increased by at least $1,000 in determining the amount of any net operating loss carryback from 1964 or 1965 which would be absorbed by the income of that year. The $1,000 respondent claims is a minimum amount of interest which petitioner should have reported from the 23 various savings accounts which he had in the greater Los Angeles area. Ultimate Findings of Fact 1. The Hazeltine property, the Burbank property, and the Canoga Park, California property were owned jointly by petitioner and Lawrence and were operated by petitioner and Lawrence in a joint venture in which each was entitled to share in profits or losses to the extent of 50 percent. 2. In the year 1964 petitioner and Lawrence sustained an operating *50 loss on the Hazeltine property in the amount of $11,301.24 of which petitioner is entitled to deduct one-half or $5,650.62. 3. Petitioner for the calendar year 1964 is entitled to deduct in addition to the interest deductions claimed by him on his income tax return for that year, the amount of $4,950, which represents one-half of the $9,900 interest paid by petitioner and Lawrence with respect to the Burbank property in the year 1964. 4. For the year 1964 petitioner is entitled to deduct $3,691.50 as a demolition loss in connection with the Canoga Park, California property which is computed by taking one-half of $6,000 representing the part of the purchase price of the property allocable to 1516 the building plus one-half of the $1,383 demolition cost. 5. For the calendar year 1965 petitioner is entitled to deduct a loss of $5,660.79 from operation of the Burbank property. Depreciation and expenses on the Burbank property which are deductible by petitioner and total $16,860.79 are computed by taking one-half of the depreciation of $4,050 claimed on petitioner's income tax return for that year and one-half of the $29,671.58 of expenses which we determined in our findings were *51 sustained in connection with that property. From these expenses is deducted the $11,200 of rents shown by petitioner on his return to be his portion of the rents received from this property. 6. For the year 1965 petitioner is entitled to deduct as an operating loss in connection with the Hazeltine property $5,981.93, computed by deducting from total expenses in connection with the operation of the property as set forth in our findings of fact of $10,401.36 plus total depreciation on the property of $4,462.50 (a total of $14,863.86) the total rental received of $2,900 and dividing the resultant loss of $11,963.86 by two. Petitioner is entitled to deduct the amount of $14,835.51 for the year 1965 as a loss on the foreclosure sale on the Hazeltine property, which amount is computed by dividing the computed adjusted basis of the property to petitioner and Lawrence equally between them. On the basis of this record and because of respondent's agreement as to certain items to be included in the computation of basis, we have determined a basis in the property of $29,671.03, composed of the following items: Downpayment and payments of principal on loan used to construct the property
$16,954.19
Construction costs disbursed by Lawrence from funds other than those received from the construction loans
19,777.36
Payment to Spicers to obtain rescission of order of sale under deed of trust 3,551.98
Total
$40,283.53
Less depreciation claimed and allowed on building for the years 1964 and 1965 10,612.50
$29,671.03
*52 7. For the year 1966 petitioner is entitled to deduct $1, 7. For the year 1966 petitioner is entitled to deduct $1,709.89 as a loss on the operation of the Burbank property which is computed by subtracting from one-half of the total of $19,005.79 of operating expenses as set forth in our findings of fact plus one-half of $4,050 depreciation as set forth in our findings of fact, the rental received from the property as reported by petitioner on his return of $9,818. 8. Petitioner is entitled to a net operating loss carryover from the years 1964 or 1965 to the year 1966 if there remains any such net operating loss after first carrying the 1964 loss to 1961, 1962 and 1963 and first carrying the 1965 loss to 1962 and 1963. In making the computation there should be deducted from any net operating loss resulting from the findings we have set forth for the year 1964, an amount of net operating carryback necessary to absorb the income reported by petitioner for the year 1961 on his Federal income tax return for that year and taking any remaining net operating loss for the year 1964 over to the year 1962 as a carryback to that year. For the year 1962 this loss, if any, is to be deducted *53 from the income of $10,330.08 reported by petitioner from wages for that year. If there remains some net operating loss from the year 1964, it is to be a carryback to petitioner's year 1963. If there does not remain any loss carryback then any loss carryback computed to result from a computation for the year 1965 shall be used in the year 1962 to the extent necessary to absorb the remaining portion of the $10,330.08, and any remaining portion of the loss carryback from 1964 or 1965 is to be carried back to the year 1963 and the portion necessary to offset petitioner's income for that year determined on the basis of petitioner's income as reported on the tax return for the year 1963 as filed by petitioner in which he reported income of $13,328.70 as wages and $100.48 from interest from the North Hollywood Federal. In determining the income to be absorbed by the net operating loss, the deductions claimed by petitioner shall be considered as reported and the interest claimed as a deduction shall be considered as paid in connection with the Hazeltine property. The real estate taxes shall be considered as paid in connection with business properties and the fire insurance of $334.55 shall *54 be considered as paid in connection with the operation of business property. If any net operating loss remains from the year 1965 after considering the 1964 and 1965 losses first to be carrybacks 151 to the years 1961, 1962, and 1963 as above set forth, this remaining net operating loss shall be considered to be a net operating loss carryover to the year 1966. Opinion Petitioner in his brief considers the issues in this case to concern the propriety of the actions of the revenue agents who investigated his income tax returns for the years here in issue. He contends that he has the right to pay the "lowest possible taxes" under the provisions of the Internal Revenue Code, and that it is incumbent upon respondent or the Court or both to ferret out the necessary facts to compute these "lowest possible taxes." Petitioner's further contention is that respondent in connection with this case has used "trickery, subterfuge, ruse, misrepresentation, fabrication, deceit, prevarication, omission, suppression, cheating, defrauding, surprise and entrapment." Under his heading, "Statutes and Regulations Involved," petitioner states: As a layman, the petitioner does not know the provisions *55 of the Internal Revenue Code as amended by Revenue Acts and other Public Laws, and is seeking, needing and relying on the protection of this Court from the Commissioners unfair, immoral and dishonest application of these rules and regulations. Petitioner's entire brief is geared to arguments similar to that contained in the above quoted statement. He concludes from this argument that since the Commissioner has agreed that facts which were developed from documents that petitioner produced at the trial show substantiation of a number of items which were disallowed in the notice of deficiency for lack of substantiation, there no longer exists any burden on petitioner to show facts in this case. Petitioner's position is that either the respondent or this Court should attempt to determine the lowest tax for any year that petitioner might be entitled to pay from any records in existence whether or not introduced as evidence at the trial of this case. Petitioner justified the numerous changes during the trial of this case in the amounts he claimed to constitute various costs and expenses as follows: I also would like to state at this time the reason my figures in all my records I have *56 submitted might be different is due, let's say, to my poor bookkeeping technique. Certainly, on the basis of the facts here shown respondent's determination cannot be considered to be arbitrary. After respondent's counsel was permitted to examine the bits and pieces of paper, cancelled checks, bank statements, and various other items assembled in no particular order which petitioner produced at the trial, respondent has conceded that the disallowances which he made in the notice of deficiency are to some extent in error. Likewise respondent has not objected to adjustments for certain items which were not originally claimed by petitioner as deductions on his income tax returns for the years here in issue and not claimed by petitioner in proper amended pleadings which have been substantiated by petitioner. However, these concessions by respondent do not show as petitioner contends that respondent's determination was arbitrary. The issues here, except that concerning petitioner's right to change the method of computing depreciation, are entirely factual. On the basis of the evidence which has been introduced at the trial, we have made findings of fact and ultimate findings of fact *57 which dispose of the issues raised. This opinion, therefore, is confined to the depreciation issue and comments with respect to some of the considerations that went into our disposition of the factual issues. Petitioner while acknowledging that he and his brother jointly shared in both profits and losses with respect to the Burbank property, claims that he is entitled to the entire operating loss and foreclosure loss with respect to the Hazeltine property. Petitioner never precisely states the underlying basis of this claim, but from various unrelated statements, it appears that petitioner is contending that all of the payments with respect to the Hazeltine property were made by him. If this is his contention, it is not supported by the facts since the record shows that some payments were made from rents collected and certain amounts were actually disbursed by Lawrence, the source of the funds for such disbursements not being shown. Also the record shows that amounts were paid on loans which were in the joint names of petitioner and Lawrence's wife but does not show the source of the funds for making such payments. Petitioner recognizes that the Hazeltine property was owned jointly *58 by him and Lawrence with title to Lawrence's portion being in Lawrence's wife and that profits were to be split fifty-fifty. He at no point says that his agreement with Lawrence was not for the splitting of losses fifty-fifty, and from the facts appearing in 1518 this record we conclude that both profits and losses were to be shared equally by petitioner and Lawrence and therefore petitioner is entitled to only one-half of the losses with respect to the operation and foreclosure sale of the Hazeltine property. The only items with respect to the Hazeltine property operating loss which we have added to the amounts respondent agrees are expenses in connection with operation of that property in 1964 and 1965 are amounts for transportation, telephone and office expense. The record affords very meager evidence on which to base the determination of such expenditures. However, considering the fact that the Hazeltine and Burbank properties were 3 miles apart and it would be necessary for the manager of these properties to travel between the two at times, we have made a determination of transportation expenses, and considering the number of apartments in the building and the fact that *59 1964 was the first year of rentals, we have as best we could determined our estimate of telephone expenses and expenses for office supplies. With respect to the loss on the foreclosure of the Hazeltine property, respondent states on brief that even though he does not concede that the method used by petitioner in computing this loss is proper, he is willing to have the Court accept petitioner's method for the purpose of this case. He, however, contends that items which constitute operating expenses and are included in computing the deductions for loss on operations should not also be included in determining the loss on foreclosure. We agree with respondent in this respect and have eliminated from the computation of the foreclosure loss items which have been included in the operating expense loss. We also agree with respondent that an interest item in the amount of $980 which was paid by petitioner in 1962 and should have been deducted in that year is not properly part of the principal payment on the mortgage on the Hazeltine property and for that reason is not properly includable in determining the loss on foreclosure. We have therefore determined the loss as computed by respondent *60 except that we have increased the loss by $3,551.98. The evidence with respect to this payment is not as clear as might be desirable but considering it in the light of all the other evidence of record, we have concluded that the $3,551.98 paid by Edward and Lawrence on April 15, 1964, in connection with obtaining a rescission of the notice of default and election to sell under deed of trust was in substance a principal payment in connection with the loan on the Hazeltine property which has not otherwise been considered in computing the amount of that loss. We therefore have concluded that a loss in the amount of $29,671.03 resulted and that petitioner is entitled to deduct one-half of such loss. With respect to the loss claimed by petitioner on the demolition of the building on the property in Canoga Park, California, we have concluded that a demolition loss was incurred by petitioner and Lawrence in the joint operation of this property and as best we could from the evidence have determined the amount of this loss. Petitioner at the trial contended he was the owner of this property and entitled to the entire loss, but on brief in effect conceded that he owned the property jointly *61 with Lawrence's wife, Sylvia. Since the escrow statement with respect to this property dated July 8, 1963, which was placed in evidence, stated that it was the escrow statement of "Mr. Lawrence Harris," respondent argues that there is insufficient evidence in this record to show that petitioner had any interest in the Canoga Park property. Considering all the evidence, we have concluded that petitioner had a one-half interest in this property and have as best we could determined the portion of the $25,000 paid for the property properly applicable to the building by considering the amount of rent being charged on the building as compared to the price of the entire property and testimony given at the trial by petitioner with respect to the building. We have accepted petitioner's testimony at the trial as to the cost of demolishing the building. In support of this testimony petitioner produced and referred to documents regarding the demolition cost on the Canoga Park building. The record would be clearer had these documents been put in evidence. However, considering the record as a whole we have accepted petitioner's testimony in this respect. We do not consider respondent to contend *62 that any issue other than one of fact exists with respect to petitioner's right to this deduction. [2]
*1519 The only items remaining in issue with respect to operating losses on the Burbank property in 1965 and 1966 are the deductions for depreciation and small items of increased expenses claimed by petitioner at the trial over amounts which he *63 originally claimed in his returns. These items included increased telephone and transportation expenses and office expenses. Respondent agreed to the allowance of the transportation and telephone expenses as originally claimed by petitioner on his return for the Burbank property and there is no evidence to substantiate any increased amounts of such expenses or any of the other increased expenses claimed except some small amount of office expense. We have determined an appropriate amount of office expenses as best we could from all of the facts in the record and have set forth such amount in our findings. There is little in the record to support the depreciation deduction of $4,050 claimed by petitioner on his return. However, obviously depreciation in some amount is allowable on this rental property. There is evidence that petitioner and Lawrence in late 1963 obtained a $180,000 loan the proceeds of which they used in the construction of the Burbank apartment building. While this is meager evidence, we consider it sufficient to support depreciation on the whole apartment building of the $4,050 shown as depreciation by petitioner on his return. It is not clear whether petitioner intended *64 this amount of depreciation to represent the entire depreciation or only one-half thereof. However, we have treated the amount as representing the entire depreciation computed on the straight line basis which appears to be the manner in which the depreciation shown on the return was computed. We have determined the interest deduction to which petitioner is entitled in 1964 in connection with the Burbank property to be the $4,950 which respondent concedes to be deductible in that year. We have reviewed the exhibit which petitioner contends supports his claimed deduction of $6,000, but have found nothing in that exhibit to support a deduction greater than $4,950. Petitioner has introduced no facts to show any proper computation for depreciation or an additional first-year depreciation allowance or a "bonus allowance" on fixtures under section 179. Petitioner has not even shown figures to support the basis of either the building or fixtures as shown on his return. Respondent accepted the depreciation as claimed on the Hazeltine property and on the basis of this concession we found this amount of depreciation to be sustained. This does not, however, relieve petitioner from proving *65 figures for a claim of additional depreciation. We, therefore, hold that petitioner has failed to prove any facts to support any claim for a depreciation deduction in excess of the amounts shown on his original returns. The record is clear that petitioner did not make an election to compute depreciation in accordance with the provisions of section 179[3] or an election to compute depreciation in any way except on the straight line method which was the method shown by his returns to have been used. This Court has held that a taxpayer is not entitled to change the method of computing depreciation from the straight line method to another method without the consent of the Commissioner. Clinton H. Mitchell, 42 T.C. 953, 967 (1964). Therefore, in addition to having shown no facts to support any computation of depreciation, petitioner also has not shown that he complied with the requirement of obtaining the consent of the Commissioner to change the method of computing depreciation. *66 The final question involves the carrybacks and carryovers of the net operating losses which it appears will result in 1964 and 1965 from the determination of the issues in this case. Apparently petitioner now recognizes the necessity of carrying back losses to prior years before there is a loss carryover to the year 1966. At least from 1520 his argument and statements at the trial and on brief, this is a reasonable inference. Also, apparently the parties are in agreement that the 1964 operating loss, if any, should first be carried back to 1961 and then to 1962 and 1963 if there is any remaining and that the 1965 loss should first be carried back to 1962 and then to 1963. Also, there appears to be no disagreement between the parties with respect to petitioner's income in the years 1961 and 1963 to which a net operating loss is to be applied. The only difference between the parties in 1962 concerns whether petitioner's reported income should be increased by some amount of interest applicable to his savings accounts. While it is reasonable to assume from the number of savings accounts which petitioner had in 1962 that he must have received some interest, there is little evidence *67 in the record to show the amount of such interest. However, the record does show that petitioner paid $980 or at least half of that amount in connection with the loan on the Hazeltine property in 1962 and it would appear he would have been entitled to deduct this interest payment in that year had he claimed it. The fact that petitioner in 1962 claimed the $1,000 standard deduction in computing his income is not a problem since we are here concerned only with petitioner's 1962 "operating income" for the purpose of determining the amount of loss carryback which would be absorbed in 1962. We have concluded in the state of the record here to consider the income as reported by petitioner in 1962 to be the proper starting point in determining the amount of the loss carryback which will be absorbed in that year. As to the year 1963, the record is even more confused. Petitioner apparently had claimed an overpayment from taxes withheld and because of an office audit had the amount of overpayment he had claimed reduced. In any event there is no showing in this record what ultimate determination was made with respect to the audit. Two of the items in that report concern items which would not *68 affect the computation of the amount of net operating loss carryback absorbed in the year 1963. The item that would affect this computation is the deduction for fire insurance with respect to an apartment building. This record is sufficient to show that in computing the amount of the net operating loss absorbed by carryback to 1963 this deduction should be made from petitioner's reported income. However, from the record we conclude that respondent does not contend that any change should be made in petitioner's 1963 income as reported and therefore we have no issue in this respect. It cannot, of course, be determined whether any amount of net operating loss will remain to be carried over to 1966 until a recomputation has been made under Rule 50, but if there does exist any such remaining loss, such remaining loss would be a proper carryover to 1966. If petitioner is still contending that he should first be permitted to carry any net operating loss for 1965 over to 1966 as a "carryback" and then to carry back to the years 1961, 1962, and 1963 any remaining losses after adjusting 1966, we do not agree with his contention. Section 172(b)(1) specifically provides, with exceptions not *69 applicable to this taxpayer, that a net operating loss for any taxable year ending after December 31, 1957, shall be a net operating loss carryback to each of the 3 taxable years preceding the taxable year of such loss, and that the net operating loss shall be first carried to the earliest year to which it may be carried. The portion of such loss which shall be carried to each of the other taxable years shall be the excess, if any, of the amount of such loss over the sum of the taxable incomes for each of the prior taxable years to which such loss may be carried. Decision will be entered under Rule 50. 1521 Footnotes
1. All references are to the Internal Revenue Code of 1954.↩
2. Sec. 1.165-3(b), Income Tax Regs.
(b) Intent to demolish formed subsequent to the time of acquisition. (1) Except as provided in subparagraph (2) of this paragraph, the loss incurred in a trade or business or in a transaction entered into for profit and arising from a demolition of old buildings shall be allowed as a deduction under section 165(a) if the demolition occurs as a result of a plan formed subsequent to the acquisition of the buildings demolished. The amount of the loss shall be the adjusted basis of the buildings demolished increased by the net cost of demolition or decreased by the net proceeds from demolition. See paragraph (c) of Sec. 1.165-1 relating to amount deductible under section 165. The basis of any building acquired in replacement of the buildings shall not include any part of the property demolished.↩
3. SEC. 179(c), I.R.C. 1954 provides as follows: (c) Election. - (1) In general. - The election under this section for any taxable year shall be made within the time prescribed by law (including extensions thereof) for filing the return for such taxable year. The election shall be made in such manner as the Secretary or his delegate may by regulations prescribe.↩